William S. Harris, State Bar No. 90341
LAW OFFICES OF WM. S. HARRIS
1499 Huntington Drive, Suite 403
South Pasadena, CA 91030
(626) 441-9300 - Phone
(626) 441-9301 - Fax
BillHarrisEsq@aol.com

Attorney for Defendant
SAI KEUNG TIN

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SAI KEUNG TIN,<br><br>　　　　Defendant. | Case No. CR 24-161-JLS-1<br><br>SENTENCING MEMORANDUM<br>OF DEFENDANT SAI KEUNG TIN<br><br>DATE:　March 14, 2025<br>TIME:　9:30 A.M.<br>CTRM:　8A |

　　　　Defendant Sai Keung Tin (Tin), by and through his counsel of record William S. Harris, hereby files his sentencing memorandum.  For the reasons explained below, the Court should impose a sentence of one year and one day of incarceration, followed by one year of supervised release, and payment of a $400 special assessment.

　　　　This sentencing memorandum is based on the attached memorandum of points and authorities, the files and records in this case, the U.S. Probation and Pretrial Services Office's presentence investigative report (PSR), the U.S. Probation and Pretrial Services Officer's disclosed recommendation letter, and

such further documents, evidence and argument as the Court may receive.

Tin reserves the right to file a response to the government's sentencing position when it is received.

DATED:  February 22, 2025               Respectfully submitted,

                                        **LAW OFFICES OF WM. S. HARRIS**


                                         By_____*William S. Harris*_____

                                        **Attorney for Defendant**
                                        **SAI KEUNG TIN**

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. PRELIMINARY STATEMENT

Tin is before the Court for sentencing following his open guilty plea to Counts 1 through 4 of the indictment, charging that he aided and abetted the export of merchandise contrary to law in violation of 18 U.S.C. sections 554 and 2(a). He was a citizen of the People's Republic of China and a resident of Hong Kong. Tin was recruited by smugglers to assist them in turtle smuggling. He agreed to receive box turtles they would ship illegally from New York and New Jersey, through an international mail facility at JFK Airport, addressed to his home in Hong Kong. The smugglers shipped the box turtles without first obtaining export permits required under an international wildlife convention to which the United States is a signatory, and thus contrary to United States laws and regulations. Tin agrees that at least four illegal shipments were addressed to his home in Hong Kong. He has accepted complete responsibility and accountability for his actions and is prepared to accept the consequences.

The PSR calculates a guideline range of 37 months to 46 months. The U.S. Probation Officer recommends a downward variance and a sentence of <u>30 months</u>. Tin is a first-time nonviolent offender who qualifies as a zero-point offender. As explained below, his role in the offense falls between minor and minimal. The turtles in question are not classified under the convention as currently endangered. Tin's offense conduct did not harm the environment, did not harm any victim, caused no monetary loss, and consisted of the aiding and abetting of a regulatory paperwork violation.

Tin calculates his guideline range as 15 months to 21 months. Applying the parsimony clause, and the 7-month variance recommended by the U.S. Probation Officer, the Court should impose a sentence of <u>one year and one day</u>. Under the facts and circumstances of this case, that sentence is reasonable, just, and sufficient to achieve each of the statutory objectives of sentencing.

## 2. TIN'S PERSONAL HISTORY AND CHARACTERISTICS

### A. Personal History

Tin has been in BOP custody since February 25, 2024. He was born in Hong Kong on August 23, 1970. He is a citizen of the PRC. He grew up in Hong Kong under difficult financial circumstances. His parents are both deceased, but he has two brothers and a sister living in Hong Kong, with whom he is close. His father was physically abusive.

Tin was a good student, graduating from high school in 1990. He has two daughters from his first marriage, and two more plus a stepson from his second and current marriage.

He most recently worked in the construction industry between 2021 and 2024. Before that he had various jobs in the garment and restaurant industries.

Tin has no prior criminal record. He agreed to participate in the present offense conduct out of naivete, a serious mistake which he deeply regrets and will not repeat.

### B. Personal Characteristics

Tin is described, by those who know him best, as simple-minded, naïve, big-hearted and kind. He was a hard worker who now readily admits to grievously bad judgment in getting mixed up with turtle smugglers. He is a nonviolent first-time offender. He is pre-diabetic. And he has a negative net worth.

## 3. CALCULATION OF SENTENCING GUIDELINES AND OBJECTIONS TO PRESENTENCE REPORT

### A. The PSR Calculation and 30-Month Recommendation

The PSR was disclosed to the parties on February 7, 2025. Dkt. 38. The PSR calculates Tin's total offense level as 21, and his criminal history category as I, with a resulting guideline imprisonment range of 37 months to 46 months. PSR Paragraph 85. Tin is a zero-point first time offender. PSR Paragraph 45.

The PSR calculation is a base offense level of 6 under U.S.S.G. § 2Q2.1(a), plus 2 levels for pecuniary gain under § 2Q2.1(b)(1), plus 18 levels for market value of $4.2 million under §§ 2Q2.1(b)(3)(A)(ii) and 2B1.1(b)(1)(J), no mitigating role adjustment, minus 3 levels for acceptance of responsibility under §3E1.1(a), (b), and minus 2 more levels for zero-point offender under § 4C1.1. PSR Pages 8 through 11. The PSR recommends a downward variance to take into account Tin's first-time offender status. PSR Paragraph 101.

The U.S. Probation and Pretrial Services Officer has recommended a below-guideline sentence of 30 months in a disclosed recommendation letter dated January 29, 2025. Dkt. 37. That would be a variance of 7 months below the low end of the calculated guideline range.

Pursuant to Federal Rule of Criminal Procedure 32(f)(1), Tin objects as follows to the PSR and disclosed recommendation letter:

**PSR Paragraphs 10 and 11.** Tin did not send any packages from California. Tin was in Hong Kong. The middlemen addressed packages from New York and New Jersey addressed to Tin's home in Hong Kong.

**PSR Paragraph 13.** Only 67 shipments were addressed to Tin on San Lau Street in Hong Kong, containing an estimated 670 turtles. Tin says he has no knowledge or involvement with turtles which may have been shipped by the smugglers to other addresses in Hong Kong.

**PSR Paragraph 31.** Only 67 shipments were addressed to Tin on San Lau Street in Hong Kong, containing an estimated 670 turtles with a market value of $1,340,000.

**PSR Paragraph 32.** The market value of turtles addressed to Tin at San Lau Street is $1,340,000, so the market value increase should be 14 levels under U.S.S.G. § 2B1.1(b)(1)(H).

**PSR Paragraph 38.** Tin should receive an intermediate mitigating role adjustment of 3 levels under U.S.S.G. § 3B1.2.

**B.     The Market Value of Turtles Attributable to Tin is $1,340,000, Not $4.2 Million.**

Tin lived at 7 San Lau Street in Hong Kong.  A total of 67 parcels containing an estimated 670 turtles were intercepted by postal authorities in California, addressed to that location.  A total of 27 of those parcels were opened and inspected, including the four parcels charged as Counts 1 through 4 in the indictment.  The market value of those 670 turtles, at $2,000 per turtle, was thus $1,340,000 not $4.2 million.  Tin says that he had no knowledge of, or connection to, other turtles which may have been shipped by middlemen to 83 Kau Pui Lung Road or Kin Yu Mansion in Hong Kong.

**C.     Tin Should Receive a 3-Level Mitigating Role Reduction.**

The PSR recommends no mitigating role reduction for Tin.  PSR Paragraph 38.  Tin disagrees for the following reasons.

A defendant who is plainly among the least culpable of those involved in the conduct of a group may receive a "minimal" role reduction of 4 levels.  U.S.S.G. § 3B1.2(a), comment 4.  A defendant who is less culpable than most other participants in the criminal activity, but whose role cannot be described as minimal, may receive a "minor" role reduction of 2 levels.  U.S.S.G. § 3B1.2(b), comment 5.  In cases falling between "minimal" and "minor" an intermediate decrease of 3 levels is available.  U.S.S.G. § 3B1.2.  Tin submits that a 3-level reduction should be applied here.

In evaluating Tin's relative culpability, the proper comparison is to all individuals who participated in Tin's offense, including the organizer and leader Kang Juntao (Juntao).  *United States v. Dominguez-Caicedo*, 40 F.4th 938, 963 (9th Cir. 2022).  The sentencing court compares Tin's culpability to the average level of culpability of all participants in the crime.  *United States v. Chichande*, 113 F.4th 913, 921 (9th Cir. 2024).  In making that comparison, the sentencing court considers the five factors identified in U.S.S.G. § 3B1.2, comment 3(C).  113

F.4th at 916.

There are three tiers of culpability among the participants in this turtle smuggling operation. The top tier is occupied by Juntao who initiated and ran the operation. Between June of 2017 and December of 2018, Juntao caused the smuggling of at least 1,500 box turtles from the United States to Hong Kong, using various middlemen he had recruited. Juntao pleaded guilty in New Jersey to federal money laundering arising from this same smuggling operation, following his extradition from Malaysia in 2019.

Juntao recruited and directed "middlemen" to ship parcels containing box turtles from cities and neighborhoods in New York and New Jersey, through an international mail facility located at JFK Airport, to Hong Kong. The parcels were intercepted by postal authorities in California. Consequently, Juntao's New York and New Jersey middlemen comprise the second and intermediate tier of relative culpability. The North Carolina poachers who originally captured the box turtles in the forest also occupy this intermediate tier.

Tin occupies the third and lowest culpability tier. He aided and abetted the turtle smuggling operation by agreeing to receive parcels containing box turtles addressed by the middlemen to his home on San Lau Street in Hong Kong.

As a passive addressee of box turtles intended by middlemen for shipment to Hong Kong, Tin is substantially less culpable than the second-tier middlemen and poachers. Over time, however, postal authorities intercepted 67 parcels which had been addressed to San Lau Street, containing 670 box turtles, so Tin's participation was more than minimal. PSR Paragraph 13. It follows that Tin's role in the overall operation falls somewhere between "minor" and "minimal" so a 3-level intermediate mitigating role reduction should be applied.

A 3-level intermediate role reduction is consistent with the five factors identified in comment 3(C) mentioned above. There is no indication that Tin understood the full scope and structure of Juntao's turtle smuggling operation, or

that he even met Juntao personally.  Tin had no participation in planning or organizing Juntao's turtle smuggling operation.  Tin had no decision-making authority in the operation.  The nature and extent of Tin's participation was to agree to receive parcels addressed to his Hong Kong home.  Finally, there is no evidence of Tin's compensation, if any, for this limited participation.

### D. A 2-Level Zero-Point Offender Reduction Should be Applied.

Tin qualifies as a zero-point offender.  PSR Paragraph 51.  Beyond the 2-level reduction in the guideline calculation, this zero-point status is also relevant as a 3553(a)-variance consideration.  This status supports the conclusion that Tin had no criminal predisposition before this case.  And this factor further suggests that a sentence of one year and one day will be sufficient to achieve the statutory objective of specific deterrence.  Tin has learned a painful lesson from this case.

### E. A 3-Level Acceptance of Responsibility Reduction Should Also be Applied.

Tin has fully accepted complete responsibility and accountability for his actions, and he has done so in a timely manner.  PSR Paragraphs 42 and 43.  Tin waived *Miranda* and submitted to an interview with law enforcement at JFK Airport in Queens on the day of his arrest.  He has signed on to a joint factual statement acknowledging his guilt.  Dkt. 33.  He has pleaded guilty to all four counts of the indictment.  Dkt. 35.  And he has done so without the benefit of a plea agreement.  He should receive the 3-level reduction in his guideline calculation.  And beyond that, his high level of acceptance should be factored into the Court's consideration under 3553(a) when deciding on the extent of a variance.

**F.    Resulting Guideline Calculation**

| | |
|---|---:|
| Base, § 2Q2.1(a) | 6 |
| Pecuniary Gain, § 2Q2.1(b)(1) | +2 |
| Market Value $1,340,000, §§ 2Q2.1(b)(3)(A) and 2B1.1(b)(1)(H) | +14 |
| Intermediate Role Reduction, § 3B1.2 | -3 |
| Acceptance, § 3E1.1(a), (b) | -3 |
| Zero Point Offender, § 4C1.1(a) | <u>-2</u> |
| **TOTAL** | **14** |

With a total offense level of 14 and a criminal history category of I, the resulting guideline range is 15 months to 21 months. The U.S. Probation Officer has recommended a downward variance of seven months below the lower end of the calculated guideline range. Subtracting those seven months, and applying the parsimony clause of § 3553(a), the Court should impose a sentence of one year and one day.

**4.    18 U.S.C. § 3553(a) SUPPORTS SUBSTANTIAL LENIENCY FOR TIN.**

**A.    The Nature and Circumstances of Tin's Offense Conduct Strongly Support Leniency.**

This is an environmental case. The Court should consider the fact that Tin's offense conduct has resulted in no harm to the environment, and no harm to the box turtle species. Nor is there any monetary loss attributable to Tin. The PSR implicitly recognizes these facts. *See* PSR Paragraph 18 (no victim).

The box turtles in Tin's case fall under CITES Appendix II. Appendix II of the convention identifies species that are not presently threatened with extinction, but which *might* become threatened in the future if trade in the species were to

remain unregulated. There is no allegation that the 67 shipments addressed to Tin's home on San Lau Street in Hong Kong would have been prohibited if they had been correctly labelled and documented through the CITES Management Authority. In other words, there is no allegation that Tin's offense conduct *in fact* harmed or threatened the species. Tin's offense conduct is a federal crime, but his crime consists of aiding and abetting the smugglers' regulatory paperwork violation committed in New York and New Jersey.

Moreover, Tin's crime does not involve animal cruelty or mistreatment. These box turtles were intended to become beloved family pets in China. The box turtles were carefully wrapped in stockings and adequately cared for during transit. It was unfortunate and unintended that even one valuable box turtle was lost during transit.

These mitigating circumstances of Tin's offense conduct recommend leniency. The nature and circumstances of Tin's offense are not inconsistent with a sentence of one year and one day.

### B. Tin's Personal History and Characteristics Strongly Support Leniency.

Nobody claims that Tin is a hardened criminal, violent psychopath, or incorrigible. Rather to the contrary. He had no prior convictions or arrests. He was gainfully employed in the construction industry before his arrest in this case. He acknowledges and deeply regrets his offense conduct in this case. It is apparent that he was inveigled by the middlemen to participate. Nevertheless, he did in fact participate, and he has now learned a painful lesson from his incarceration since February 25 of last year. When he returns to Hong Kong after his release from BOP custody, it is extremely unlikely that he will have any further contact with the criminal justice system. These personal factors are not inconsistent with a sentence of one year and one day.

**C.     Lengthy Incarceration Beyond One Year and One Day in Custody is Totally Unnecessary to Afford Adequate Deterrence or to Protect the Public.**

Tin is not someone presenting a high risk of repeat behavior. His attached sentencing letter demonstrates that he has learned his lesson from this painful ordeal. He will return to Hong Kong following his release from BOP custody, and he will have no further contact with the criminal justice system.

One year and one day of incarceration is enough punishment for Tin under the parsimony clause. Any incarceration beyond one year and one day is not necessary either to protect the public from Tin or to deter him from committing future offenses. Tin poses no future danger to society. His life prior to the events here in question, as mentioned above, was exemplary. And it is extremely unlikely that Tin will involve himself in future misconduct. Tin will be deported back to his family in Hong Kong after his release from BOP custody. He had no criminal predisposition to begin with, and he certainly has none after this ordeal.

Nor would Tin's lengthier incarceration beyond one year and one day serve the goal of general deterrence. Tin has already paid a heavy price because of his initial bad judgment to aid and abet a New York turtle smuggling operation. He has been humiliated, traumatized, incarcerated, and separated from his family. This is not a high-profile case. It is unlikely, therefore, that any lengthier incarceration is needed to influence future potential smugglers.

Any incarceration of Tin for longer than one year and one day would serve no specific or general deterrent purpose, nor would it increase public protection or benefit the environment. Any lengthier sentence for Tin, therefore, would be contrary to the parsimony clause.

**D.     Just Punishment and Respect for the Law would not be Served by Tin's Lengthier Incarceration Beyond One Year and One Day.**

Section 3553(a)'s retributive goals "to promote respect for the law" and "to provide just punishment for the offense" likewise would not be achieved by any

lengthier incarceration of Tin. One year and one day in federal prison for this first-time nonviolent offender is ample punishment for retributive purposes.

Other than duration, there are no aggravating factors regarding Tin's offense conduct. But there are multiple mitigating factors. Tin's offense conduct did not involve drugs, guns, violence, or cause monetary loss. There is no harm to the box turtle species or to the environment. Tin is a zero-point offender. He will be deported back to Hong Kong when he is released from BOP custody. He has been separated from his family. And after this ordeal, as noted above, it is extremely unlikely that Tin would involve himself in future misconduct.

In short, any incarceration of Tin beyond one year and one day in federal prison would serve no retributive purpose, and would thus be contrary to the controlling parsimony clause.

### E. Section 3553(a)(6) Supports a Sentence for Tin Not More Than One Year and One Day.

Juntao initiated and ran the charged turtle smuggling operation. PSR Paragraphs 5 and 9. He was sentenced to 38 months. That sentence is relevant here, even though the charge in New Jersey was federal money laundering. Juntao participated in the same crime as Tin. Tin should receive a sentence well below 38 months to reflect his lesser culpability in comparison to Juntao.

**5.     CONCLUSION**

This Court's charge under the parsimony clause is to fashion a sentence for Tin which is "sufficient, but not greater than necessary" to achieve the four statutory objectives of sentencing.  18 U.S.C. § 3553(a).  One year and one day in federal prison, followed by one year of supervised release and a $400 special assessment, will more than capture the retributive and deterrent objectives of sentencing, while ensuring that Society's finite resources are not spent on any lengthier incarceration of a nonviolent first-time offender, who harmed no victim, who did not harm the environment, who caused no monetary loss, and who poses no future danger to anybody.

DATED:  February 22, 2025          Respectfully submitted,

                                                                 **LAW OFFICES OF WM. S. HARRIS**

                                                                 **By**_____*William S. Harris*_____

                                                                  **Attorney for Defendant**
                                                                  **SAI KEUNG TIN**

Wsh\5771\sentencing memo

February 17, 2025

Your honorable Judge Staton,

My name is Yeumi Tin, Ricky S.K. Tin's sister. As his sibling, I feel compelled to offer my perspective on his character and circumstances that have led him to his situation. I humbly ask for your mercy and understanding as you consider his case.

In our family of four siblings, I am the third child and the only daughter. Ricky is my youngest brother. Growing up, our parents were often out working long hours to provide for us, and I was often the one who took care of Ricky. I watched him grow up, and I know him better than anyone else in the world.

Ricky has always been a simple-minded man, sometimes even naïve. He has always believed that if you are kind to others, they will be kind to you in return. He values friendship deeply, even when he has been disappointed or wounded by those he trusted, he continues to have faith in friendships. He continues to see the good in people, approaching the world with unyielding optimism, as if everyone in the world treats him with the same kindness he extends to others.

Ricky is big-hearted. Though he may not have much in terms of material wealth, his true richness lies in the kindness within his heart. He is always willing to lend a helping hand to anyone in need. He does not own much financially, so he works long, hard hours to make a living. This is why it was such a shock to our entire family when we learned about the charges against him.

We, our family, believe that Ricky was unaware of the full extent of what he was involved in. He is definitely not a leading figure or core member of any smuggling organization. If he were, he would not have struggled so much financially over the past years. We are with the conviction that Ricky, a hardworking man who has strived to make ends meet, was capitalized on by others due to his trusting nature and lack of awareness.

While we do not condone his actions and we do understand that ignorance does not excuse his actions, we know that Ricky would never intentionally violate the law or commit a crime. Ricky deeply regrets what has happened because of his ignorance and is willing to take responsibility for his actions. We, as his family, also acknowledge that he must take responsibility for his mistake and is committed to supporting Ricky and ensuring he learns from this painful experience. We sincerely appeal to Your Honor for mercy in his sentencing. Ricky is not a criminal at heart; he is a good person who has made a terrible mistake. This experience has been a painful lesson for him; if given the opportunity, I believe he will prove himself to be a law-abiding and responsible individual.

Thank you for taking the time to consider this letter.

Sincerely,
Yeumi Tin

RE: SAI KEUNG TIN
NO: 2:24-CR-161-JLS

DEAR JUDGE STATON,

MY NAME IS Ricky Tin. I AM IN YOUR COURT DUE TO CHARGES OF UNLAWFLY IMPORTING TURTLES BACK TO MY NATIVE COUNTRY OF HONG KONG. I HAVE BEEN UNDER ARRESTED SINCE 25 FEB, 2024. FIRST AND FOREMOST I WANT TO APOLOGIZE TO MY FAMILY FOR ALL THE PAIN AND STRESS I HAVE CAUSED THEM. NEXT I WANT THE COURT TO KNOW THAT I APOLOGIZE & TAKE FULL RESPONSIBILITY FOR MY UNLAWFUL ACTIONS. I WAS NOT AWARE OF THE SERIOUSNESS OF MY CRIME AND WHILE I AM IN NO WAY TRYING TO JUSTIFY ME BREAKING THE LAW, I DID NOT THINK IT WAS SUCH A BAD THING IN HELPING GET TURTLES IN TO MY NATIVE HONG KONG. IN HERE I CAN PROMISE THE COURT NOW THAT I KNOW THE SERIOUSNESS OF MY CRIME. I WILL NEVER DO IT AGAIN. I NEVER BELIEVED THAT ME AGREEING TO WHAT I BELIEVED WAS NOT A BIG DEAL, WOULD BECOME SUCH A GREAT DEAL IN MY LIFE. ALL I WISH NOW IS TO RETURN BACK TO HONG KONG AND CONTINUE MY CONSTRUCTION JOB WITH MY FAMILY. I HAVE NO INTEREST IN TURTLES (TO BE HONEST) OR ████████████████████████ SO IT WILL HAVE NO EFFECT ON MY LIFE IF I NEVER DEAL WITH A BOX TURTLE AGAIN IN MY LIFE. IT WAS A NAIVE MISTAKE AGREEING TO HELP AND I ASURE YOU IT WILL NEVER HAPPEN AGAIN. NOT IN A MILLION YEARS WOULD HAVE I EVER IMAGINED THAT I WOULD HAVE SUFFERED SO MUCH STRESS PAIN IN MY LIFE OVER THAT ONE WRONG CHOICE.
PLEASE UNDERSTAND THIS YOUR HONOR. THANK YOU.

Yours Truly
Ricky Tin

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Teresa Mac Millan, am a resident of/employed in the aforesaid county, State of California; I am over the age of 18 and not a party to the within action; my business address is: 1499 Huntington Drive, Suite 403, South Pasadena, California 91030.

On February 22, 2025, I served the foregoing **SENTENCING MEMORANDUM OF DEFENDANT SAI KEUNG TIN** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Ms. Claudia A. Velasquez
U.S. Probation and Pretrial Services Officer
255 East Temple Street, Suite 1410
Los Angeles, CA 90012

☒ (BY MAIL) I caused such envelope with postage thereon fully paid to be placed in the United States mail at South Pasadena, California.

☒ (FEDERAL) I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 22, 2025        _____/s/_____
                                     Teresa Mac Millan

-14-